## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

PAUL A. WHITE,
REG. #02272-045                                                    PLAINTIFF

V.                              2:14CV00060 DPM/JTR

UNITED STATES OF AMERICA                              DEFENDANT


### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr.   Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

# I.  Introduction

Plaintiff, Paul A. White ("White"), is a federal prisoner in Forrest City, Arkansas ("FCI-FC").  He has filed this *pro se* action, pursuant to the Federal Tort Claims Act ("FTCA"), alleging that, from May of 2004 to April of 2010, medical professionals at FCI-FC negligently failed to treat his hepatitis C, causing him to develop cirrhosis of the liver.[1]  *Docs. 2 & 5.*

Defendant United States of America has filed a Motion for Summary Judgment and supporting papers. *Docs. 20, 21, & 23.* White has filed a Response.  *Docs. 38 & 39.*

Before addressing the merits of the pending Motion, the Court will review the relevant facts.

# II. Facts.[2]

1.     On December of 1999, while he was a federal prisoner in Greenville, Illinois, White was diagnosed with hepatitis C. *Doc. 21, Ex. A.*  At that time, he was 58 years old, overweight, hypertensive, asthmatic, and had mildly elevated liver

---

[1]  Unlike most *pro se* litigants, White was formerly a licensed attorney with extensive legal experience, including: (1) serving as editor of the University of Missouri law review in 1967; (2) being an Assistant United States Attorney, handling both civil and criminal litigation, from 1968 to 1977; and (3) acting as trial counsel for Kansas City Power and Light from 1978 to 1982. *Doc. 21, Ex. B at 10-21.*

[2]   The Court recites these facts in the light most favorable to White, as required by Rule 56 of the Federal Rules of Civil Procedure. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986).

enzymes. *Id.* In 1999, the only available treatment for hepatitis C was a 48-week course of interferon and ribavirin medications, which posed significant side effects coupled with a less than 50 percent chance that the treatment would succeed.[3] *Id.; Doc. 38 at 174-214.* Because White was not experiencing any symptoms of hepatitis C or liver complications, the prison doctors determined that he was not a candidate for interferon/ribavirin treatment. *Doc. 21, Ex. A.*

2.      Over the next five years, prison doctors in Greenville, Illinois routinely monitored White's liver enzymes, which returned to normal. *Id.* During quarterly physical examinations, prison medical providers noted that White was not jaundiced, and his liver felt normal upon palpitation. *Id.* Additionally, White did not complain of any symptoms of hepatitis C or liver malfunction. However, he remained overweight and hypertensive, partially due to his failure to properly take his blood pressure medications. *Id.* He also began taking medication for high cholesterol, and his blood work revealed mild kidney failure and high glucose levels. *Id.* Based on these factors, prison doctors determined that interferon/ribavirin treatment was not appropriate care for his hepatitis. *Id., Exs. A & C.*

3.      In May of 2004, White was transferred to "FCI-FC." *Id., Ex. A.* Over the

---

[3]      The possible side effects include fever, fatigue, muscle pain, depression, rage, neutropenia, hemolysis, thyroid dysfunction, and renal failure. The success rate of interferon/ribavirin treatment for patients with genotype 1 of hepatitis C (which is was White later learned that he had) was 40%. *See Doc. 38 at 98, 102, 133-134, 185-186, 213-214, & 354-55.*

next six years, prison medical providers: (a) continued White's asthma, hypertension, and high cholesterol medications; (b) began treating him for type 2 diabetes; (c) routinely monitored his liver enzymes, which were normal; and (d) performed physical exams during which White did not report or exhibit any symptoms of hepatitis C or liver damage.  *Id.*  These factors caused prison medical providers to decide that it was not in White's best interest to receive interferon/ribavirin treatment. *Id., Exs. A & C.*

4.     In April of 2010, White was transferred from FCI-FC to a residential release center in Kansas City, Missouri.  *Doc. 5.*

5.     In October of 2010, White was released from federal custody.  *Doc. 21, Exs. A & C.*  Thereafter, he obtained a liver biopsy that revealing he had genotype 1 of hepatitis C, and cirrhosis of the liver. *Id.*  The parties *agree* that interferon/ribavirin treatment, *which was the only available treatment for hepatitis C from 1999 to 2010,* had only a 40% success rate in treating patients with genotype 1 of hepatitis C. *Doc. 21, Ex. C at 3; Doc. 38 at 3.*

6.     In February of 2012, White was arrested for violating the terms for his supervised release and returned to FCI-FC, where he remains incarcerated. *Doc. 21, Ex. B at 9-19.*

7.      In June of 2015, federal prison doctors successfully treated White's

hepatitis C with a 12-week course of an unspecified medication that was *unavailable* when White was in prison from 1999 to 2010. *Doc. 38 at 3.*

### III. Discussion

White's medical malpractice claim against the United States of America, under the FTCA, is governed by the substantive law of the state where the allegedly tortuous acts occurred.[4]   *See* 28 U.S.C. § 1346(b); *Sorace v. United States,* 788 F.3d 758, 763 (8th Cir. 2015).   White alleges that *all* of the alleged medical malpractice took place while he was incarcerated in FCI-FC, from May of 2004 to April of 2010. Thus, all of his FTCA claims are governed by Arkansas law.

Pursuant to Ark. Code Ann. § 16-114-206(a), a plaintiff raising a malpractice claim must have "expert testimony" establishing the applicable standard of care, a breach of that standard of care, and proximate causation. *Accord Williams v. Elrod,* 72 S.W.3d 489, 492 (Ark. 2002). The only exception to the expert testimony requirement is when the standard of care and proximate causation are "within the jury's comprehension as a matter of common knowledge." Ark. Cod. Ann. § 16-114-206(a)*; see also Mitchell v. Lincoln,* 237 S.W.3d 455, 460 (Ark. 2006) (explaining that, in the "vast majority" of cases, the common knowledge does not apply); *Haas*

---

[4]   The FTCA waives sovereign immunity and allows plaintiffs to hold the United States vicariously liable for negligent acts committed by federal employees. *See* 28 U.S.C. § 1346; *Dykstra v. U.S. Bureau of Prisons,* 140 F.3d 791, 795 (8th Cir. 1998).

*v. Starnes*, 915 S.W.2d 675, 678 (Ark. 1996) (explaining that the common knowledge exception applies to obvious cases of negligence such as "a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it").

Both the applicable standard of care for the treatment of White's hepatitis C and causation issues related to whether his liver damage could have been averted, if he had received interferon/ribavirin treatment prior to his release from FCI-FC in 2010, are clearly matters *not* within a jury's common knowledge and require expert testimony. *See Kennedy v. Hobbs*, 2014 WL 4700090 (E.D. Ark. Sept. 19, 2014) (unpublished opinion) (granting summary judgment because the appropriate standard of care for hepatitis was not a matter of common knowledge and the plaintiff did not have expert testimony to substantiate his claim); *Cassell v. Corr. Med. Servs.*, 2006 WL 794881 (E.D. Ark. Mar. 27, 2006) (same).

White has *no expert testimony* from either his freeworld treating physicians or any other medical experts establishing that: (1) prison medical providers breached the standard of care when they determined, from May of 2004 to April of 2010, that interferon/ribavirin treatment was *not* medically appropriate care for his hepatitis C; or (2) the cause of his alleged liver damage was the result of him not receiving interferon/ribavirin treatment at FCI-FC, from May of 2004 to April of 2010. White seeks to circumvent the legal requirement that he provide expert medical testimony

to support his claims by arguing that, pursuant to BOP guidelines, prison medical providers should have performed a liver biopsy, analyzed his viral load, and performed other diagnostic testing before concluding that he was not a candidate for interferon/ribavirin treatment.    However, the BOP guidelines White cites do *not* support his argument.  To the contrary, those guidelines make it clear that White's age, consistently normal liver enzyme readings, high glucose levels, and renal issues made diagnostic testing *unnecessary* and interferon/ribavirin treatment *inappropriate*.[5] *Doc. 21, Ex.  C;  Docs. 38 at 92-132, 178-211, & 320-344.*

Additionally, Defendant's medical expert concludes, after carefully reviewing the medical records and BOP guidelines, that "White's medical care and treatment with respect to his hepatitis C was within the standard of care while he was incarcerated through April 2010."[6] *Doc. 21, Ex. C at 1-2.* White has *not* produced any expert testimony to refute that conclusion or otherwise establish that prison medical providers breached the standard of care when they decided to forgo treating his hepatitis C with interferon and ribavirin.

---

[5] In his deposition, White alleged that the his glucose levels remained high because, for several years, prison doctors did not offer him any treatment for diabetes.  *Doc. 21, Ex. C.*  However, in his Complaint and Amended Complaint, White did not raise any claim regarding the treatment he received for diabetes. *Docs. 2 & 5.*

[6] Defendant's medical expert, Dr. Eric Bravo, is a certified internal medicine physician who has previously served as the Chief of Medicine at Baptist Hospital in Little Rock, Arkansas.  He was not personally involved in White's medical care.  *Doc. 21, Ex. C.*

Finally, White has no expert testimony to establish causation for his alleged liver damage, *i.e.*, that his cirrhosis of the liver was caused by and could have been avoided if he had received interferon/ribavirin treatment before his release from FCI-FC in 2010.   Furthermore, the *parties agree* that interferon/ribavirin treatment was only 40% effective for patients, like White, who suffered from genotype 1 hepatitis C.   Thus, as noted by Defendant's medical expert, even if White had received interferon/ribavirin treatment prior to his release in 2010*,* it "most likely would not have made any difference in his ultimate outcome."  *Doc. 21, Ex. C at 3.*

White has failed to produce expert testimony to substantiate his medical malpractice claims, as required by Ark. Code Ann. § 16-114-206(a). Accordingly, as a matter of law, Defendant is entitled to summary judgment.

## IV.  Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendant's Motion for Summary Judgment *(Doc. 20)* be GRANTED, and that this case be DISMISSED, WITH PREJUDICE.

Dated this 6th day of May, 2016.

_____
UNITED STATES MAGISTRATE JUDGE